UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:21-cv-00059

ANTHONY VINES,                )
                              )
        Plaintiff,             )
                              )
v.                            )           O R D E R
                              )
MOUNTAIRE FARMS, INC.,         )
                              )
        Defendant.             )

This is before the Court on defendant's motion for summary judgment [DE 31] and plaintiff's motion [DE 39] to strike defendant's response. Plaintiff alleged that defendant violated North Carolina's Retaliatory Employment Discrimination Act ("REDA"), N.C. Gen. Stat. § 95-240, *et seq.*, and wrongfully discharged him in violation of public policy. This matter has been fully briefed and is ripe for adjudication.

## BACKGROUND

In August 2018, Anthony Vines applied to work at Mountaire Farms' chicken processing facility in Lumber Bridge, North Carolina. On his medical questionnaire, Vines did not disclose that he suffered from neuropathy, a condition that makes physical labor painful. On August 20, 2018, he was hired and began to work on the factory line. Two weeks into the job, he told his supervisor (Tiffany Campbell) that his neuropathy made his current job painful. In response, Campbell assigned him new duties, one of which was scooping dry ice into a container.

On January 10, 2019, Vines left work early, complaining of symptoms caused by the dry ice exposure. He was absent for a week. On January 17, he returned with a doctor's note, complained to Campbell, and requested additional protective equipment. On February 15, Vines again left work early, complaining about the dry ice. Unbeknownst to Mountaire, Vines then filed a complaint with North Carolina Occupational Safety and Health (NCOSH). Vines was absent for

another week before returning on February 22 with a doctor's note.

That same day, Vines met with a member of human resources (Gilda Richardson) and a plant manager (Julian Hunsucker). The parties disagree about the purpose of this February meeting. According to Vines, it was to stop him from complaining about the dry ice and requesting additional protective equipment.[1] According to Mountaire, it was to address Vines' absenteeism. Mountaire's attendance policy provides that an employee may accrue up to eight unexcused absences within a six-month period before being subject to termination. During the meeting, Mountaire gave Vines a "counsel slip" showing he had accrued seven unexcused absences.

On March 5, 2019, NCOSH inspectors visited Mountaire's facility and attempted to test the CO2 levels near the dry ice area.[2] By this time, Vines had accrued thirteen unexcused absences. The next day, Wednesday, March 6, Vines met with Richardson, Campbell, and Hunsucker. What happened at this March 6 meeting is disputed. Mountaire claims it modified Vines' duties to accommodate his concerns about the dry ice. Vines claims that Campbell took his access card and said, "see you Monday." The parties agree that Vines did not work on March 7 and 8. Mountaire did not count these as "unexcused absences."

On Monday, March 11, Vines returned to work and was relocated to a new job away from dry ice. Vines found this job difficult and told Richardson he could not return to work because he had injured his back. About two weeks later, Vines – still absent – requested a personal leave of absence from March 25 to April 12 to visit his terminally ill sister. Mountaire granted Vines' request because first-year employees are allowed 240 hours of personal leave.

On April 15, the day Vines was supposed to return to work, Vines told Mountaire's

---

[1] Initially, Mountaire denied Vines' request, but Mountaire claims provided it two weeks later.
[2] Due to an equipment failure, inspectors were unable to perform the necessary measurements. NCOSH returned for additional testing on March 12, 2019, and eventually fined Mountaire $4,875 for CO2 levels that exceeded the allowable permissible exposure limit.

2

benefits manager (Maria Vos) that he couldn't return to work due to medical reasons. Vines had used up all his personal leave, so Vos said she would need to see a note from a doctor. In the past two weeks, Vines had visited two doctors. The first advised him that he could return to work with no restrictions on March 15; the second advised him that he could return to work with no restrictions on March 23.

On April 17, Vines saw a third doctor who advised that Vines could return to work with *light duty* restrictions. With that note in hand, Vines met with Richardson and requested a light duty job. Richardson denied his request because Mountaire reserved its light duty jobs for employees with worker's compensation claims, and Vines did not have a worker's compensation claim. Vines claims he was fired; Mountaire claims Vines resigned. Mountaire's records indicate he is eligible to be rehired.

On June 14, 2019, Vines filed a complaint with the North Carolina Department of Labor (NCDOL), alleging Mountaire violated the REDA. After conducting interviews with Richardson, Vos, and Campbell the NCDOL denied Vines' complaint. NCDOL issued a notice of right to sue, and on December 1, 2020, plaintiff filed a complaint in the General Court of Justice, Superior Court Division, for Wake County, North Carolina. Plaintiff seeks monetary damages for defendant's alleged violations of REDA and public policy. [DE 1-1]. On February 4, 2021, defendant removed the action to the United States District Court for the Eastern District of North Carolina claiming diversity jurisdiction. [DE 1].

## DISCUSSION

### I. Standard of review

Summary judgment is proper only when, viewing the facts in the light most favorable to the nonmoving party, there is no genuine issue of material fact entitling movant to judgment as a

3

matter of law. Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). An issue is "genuine" if a reasonable jury, based on the evidence, could find in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining whether a genuine issue of material fact exists for trial, a trial court views the evidence and the inferences in the light most favorable to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex* 477 U.S. at 323. Once the moving party has met its burden, the nonmoving party must then "set forth specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986).

## II. Vines established a *prima facie* case for discrimination

To state a *prima facie* REDA claim, a plaintiff must show that (1) he exercised his right to engage in protected activity and (2) plaintiff suffered an adverse employment action that was casually connected to the exercise of that protected activity. *Edwards v. PCS Phosphate Co.*, 812 F. Supp. 2d 689, 693 (E.D.N.C. 2011). If plaintiff establishes a *prima facie* REDA claim, the burden shifts to defendant to show that it would have taken the same adverse action in the absence of the employee's protected activity. *Id.* If defendant does show a legitimate reason for the adverse action, the burden shifts back to plaintiff to demonstrate that the proffered legitimate reason was actually pretext for discrimination. *Lilly v. Mastec N. Am., Inc.*, 302 F. Supp. 2d 471, 481 (M.D.N.C. 2004).

1. The OSHANC complaint & the internal complaint are protected actions

Filing a complaint or initiating any inspection of inquiry related to the Occupational Safety

4

and Health Act of North Carolina (OSHANC) is protected activity under REDA. N.C. Gen. Stat. § 95-241(a)(1)(b). On February 15, 2019, Vines engaged in protected activity by filing a complaint to NCOSH describing the respiratory effects caused by his exposure to dry ice.

An "internal complaint" made to a supervisor "alleging ongoing OSAHNC violations," which "leads to an investigation" is probably a protected activity. *Driskell v. Summit Contracting Grp., Inc.*, 828 F. App'x 858, 867 (4th Cir. 2020). On February 25, 2019, plaintiff complained about the dry ice to Tiffany Campbell (his supervisor), Gilda Richardson (a Human Resources officer), and Julian Hunsucker (a Plant Manager). Although these complaints did not directly lead to an investigation, they did allege ongoing OSHANC violations. Viewing the facts in the light most favorable to plaintiff, the Court finds adequate evidence that his internal February 25 complaint constituted a protected action.

2. Causal connection between the protected actions and the adverse employment actions

Vines asserts he suffered four adverse employment actions: a disciplinary warning, a two day suspension, a relocation to a more difficult task, and termination. To prove a causal connection between the protected action and the adverse action, "plaintiff must demonstrate that retaliatory motive was a substantial factor in the adverse employment actions taken by the defendant. Accordingly, proof that the adverse employment action is causally connected to the plaintiff's protected activity . . . is an essential element to a REDA claim." *Brown v. Sears Auto. Ctr.*, 222 F. Supp. 2d 757, 762 (M.D.N.C. 2002) (quotations omitted). Causal connection can be proved by close temporal proximity between the exercise of the protected activity and the adverse employment action. *Smith v. Computer Task Grp., Inc.*, 568 F. Supp. 2d 603, 614 (M.D.N.C. 2008). One month or less may be sufficient to establish causation, but two and a half months may be sufficient to sever it. *Id.* at 614 (collecting cases). A plaintiff may always present "direct and

5

circumstantial evidence of causation or non-causation." *Edwards v. PCS Phosphate Co.*, 812 F. Supp. 2d 689, 695 (E.D.N.C. 2011); *see Lilly v. Mastec N. Am., Inc.*, 302 F. Supp. 2d 471, 483–84 (M.D.N.C. 2004).

A. Disciplinary warnings

A disciplinary warning is an adverse employment action. *Bumgardner v. Spotless Enterprises, Inc.*, 287 F. Supp. 2d 630, 633 (W.D.N.C. 2003). There is no dispute of material fact that, on the same day Vines complained about the dry ice, Campbell gave him a counsel slip documenting his absences and warned him that he could be terminated upon further absences. The close temporal connection between the February 25 complaint and the February 25 disciplinary warning is sufficient to establish a *prima facie* REDA claim.

B. Two-day suspension

A two-day suspension would qualify as an adverse employment action, but the parties disagree about whether Vines was actually suspended from work on March 7 and March 8. However, it is undisputed that on Wednesday, March 6, Richardson told Vines, "see you Monday." And it is undisputed that Vines did not work his scheduled shifts on March 7 and 8. Thus, it is reasonable to infer that Campbell did not expect Vines to work until Monday, effectively suspending him for two days. Mountaire argues it is company policy to file paperwork documenting a suspension and the absence of paperwork proves Vines was not suspended. But a jury could find that Mountaire did not file the required paperwork in this isolated instance. Moreover, when a Mountaire employee is suspended, it is company policy for that suspension not to count as an unexcused absence. Mountaire did not count Vines' two-day absence as unexcused, suggesting that it was a suspension.

Vines can make a *prima facie* case for causation as well. On March 5, 2019, Mountaire first learned someone had filed a complaint with NCOSH when a state inspector arrived at

6

Mountaire's Lumber Bridge facility to test the dry ice area. Vines alleges he was suspended the very next day. This close temporal connection is strong evidence of a causal connection. Mountaire argues there's no smoking gun evidence that Mountaire *knew* Vines was the one who filed the complaint. But that level of evidence is not required at this stage. Mountaire probably suspected Vines because the inspectors targeted the dry ice area, and Vines was one of the few employees who worked in that area and complained about it.

### C. Relocation

Relocation is not an adverse action unless it is retaliatory. On March 11, 2019, Vines was given a new job that he found physically difficult. Vines claims this was retaliatory because Mountaire knew about Vines' neuropathy and that Vines would struggle to perform this physically strenuous job. The alleged difficulty of the new position, coupled with the temporal proximity between the protected action and the relocation is enough to establish a *prima facie* case.

### D. Termination

Termination is an adverse action. N.C. Gen. Stat. § 95-240(2). Mountaire claims Vines quit for medical reasons. But drawing all inferences in Vines' favor, the Court finds he has established a *prima facie* case that he was terminated. Vines claims that Richardson threatened termination if he did not stop complaining about the dry ice. Vines alleges he was terminated on April 17, 2019, 43 days after the first NCOSH inspection and 51 days after he complained to his supervisors. This weak temporal connection is explained by the fact that April 17 was the first time Vines had returned to work since March 11. In other words, it was the first opportunity Mountaire had to fire him. Considering this evidence most favorably to Vines, the Court finds plaintiff established a *prima facie* REDA claim for all four adverse employment actions.

### III. Mountaire established two legitimate motives

Once the *prima facie* elements have been met, the burden shifts to the employer to show

7

that it "would have taken the same unfavorable action in the absence of the protected activity of the employee." N.C. Gen. Stat. § 95-241(b); *Smith v. Computer Task Grp., Inc.*, 568 F. Supp. 2d 603, 617 (M.D.N.C. 2008). Vines' absenteeism and claimed light duty restriction gave Mountaire legitimate reasons to take adverse actions against him. Vines had racked up unexcused absences and had used up his personal leave. And in mid-April, after a five-week absence, Vines claimed to be limited to light duty. After accommodating him for weeks, Mountaire's patience had run out.

Mountaire had two non-retaliatory motives for taking the adverse actions against him. The first is that Vines was habitually absent from work. There is no dispute that Vines' absences violated Mountaire's absenteeism policies. Specifically, Vines was allowed eight unexcused absences, but by March 6, 2019, he had thirteen. And by April 17, 2019, Vines had exhausted all of the 240 hours of personal leave available to him as a first-year employee. Despite this, Vines requested more time off work, giving Mountaire a strong legitimate reason to take adverse action against him.

The second non-retaliatory reason is that Vines claimed to be limited to light duty work. Vines did not disclose his neuropathy to Mountaire before hiring, and Vines does not seriously argue that Mountaire was required to accommodate his neuropathy. Mountaire reserved its light duty jobs for employees with workers' compensation claims, and Vines did not have such a claim. Mountaire was not required to provide Vines with a position of his choosing.

**IV.    Vines failed to rebut Mountaire's legitimate motives**

The employee has the burden to rebut the employer's legitimate reasons and show they are pretext. *Carter v. Ball*, 33 F.3d 450, 460 (4th Cir. 1994). "The plaintiff always bears the ultimate burden of proving that his employer intentionally retaliated against him and can fail to meet his burden not only by failing to establish a *prima facie* case, but also by failing to show a genuine

8

factual dispute over the employer's legitimate nondiscriminatory reason." *Wiley v. United Parcel Serv., Inc.*, 102 F. Supp. 2d 643, 651 (M.D.N.C. 1999) (citing *Mitchell v. Data Gen. Corp.*, 12 F.3d 1310, 1318 (4th Cir. 1993)). Ultimately, Vines fails to show Mountaire's legitimate reasons are pretext.

Vines claims Mountaire terminated him as retaliation for the OSHANC complaint. But ultimately, a "plaintiff's good faith belief of retaliatory intent, without more, is not enough to withstand summary judgment." *Laughlin v. Metro. Washington Airports Auth.*, 952 F. Supp. 1129, 1140 (E.D. Va. 1997). Vines concludes that his absenteeism was a pretext because Mountaire rarely fired workers for violating its absenteeism policy. *Abels v. Renfro Corp.*, 335 N.C. 209, 218, 436 S.E.2d 822 (1993) (allowing evidence of the comparative treatment of employees to show pretext). However, Vines provides no evidence of other employees who violated the absenteeism policy but were not terminated. *See Wilkerson v. Pilkington N. Am., Inc.*, 211 F. Supp. 2d 700, 707 (M.D.N.C. 2002) n. 4 (M.D.N.C. 2002); *Edwards v. PCS Phosphate Co.*, 812 F. Supp. 2d 689, 693 (E.D.N.C. 2011).

Vines also fails to show his relocation was retaliatory. When Vines complained about the dry ice job, he must have known that he might be reassigned to a new job. And he must have known that Mountaire was not required to assign him to a job of equal or lesser difficulty. Vines did not disclose his neuropathy to Mountaire when he was hired, and his physical inability to perform is not evidence of retaliation. Vines claims that Campbell knew the new job would be too hard for him due to his neuropathy. But there is no evidence that Campbell was responsible for his relocation.

Vines argues he was warned about missing work because he complained about the dry ice. But it is far more likely that Vines was warned about missing work because Vines had missed a

9

lot of work. The two-day suspension was probably due to Vines' absenteeism as well.[3] Therefore, plaintiff's REDA claim must be dismissed.

## V.  Public policy cause of action

The North Carolina Equal Employment Practices Act provides no private cause of action for violation of the stated public policy, nor have North Carolina courts recognized one as arising independently out of the statute. N.C. Gen. Stat. § 143-422.2; *Smith v. First Union Nat. Bank*, 202 F.3d 234, 247 (4th Cir. 2000). Without the REDA claim, the alleged violation of public policy must also be dismissed.

## CONCLUSION

For the foregoing reasons, defendant's motion [DE 31] to summary judgment is GRANTED. Plaintiff's motion [DE 39] is DENIED AS MOOT. The clerk is DIRECTED to close the case.

SO ORDERED, this __/__ day of March, 2023.

TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE

---

[3] And even assuming *arguendo* the suspension was a violation of REDA, this Court would dismiss the claim for lack of subject matter jurisdiction. Defendant removed this action to federal court on diversity jurisdiction, and standing alone, the two-day suspension would fall well below the $75,000 threshold for diversity jurisdiction. Considering the factors set out in *Shanaghan v. Cahill*, 58 F.3d 106 (4th Cir. 1995), the Court would dismiss the matter with instructions to refile in state court.